**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6994
Facsimile: 619.756.6991
tcarpenter@carlsonlynch.com

Edwin J. Kilpela
Gary F. Lynch
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
ekilpela@carlsonlynch.com
glynch@carlsonlynch.com

*Attorneys for Plaintiff and*
*Proposed Class Counsel*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALYSSA HEDRICK, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>NEW YORK & COMPANY, INC., a DELAWARE corporation, NEW YORK & COMPANY STORES, INC., a NEW YORK corporation, and DOES 1- 50, inclusive,<br><br>        Defendants. | Case No.   **'17 CV 1153 AJB  JMA**<br><br>**CLASS ACTION COMPLAINT**<br><br>1.  **Violation of California's Unfair Competition Laws ("UCL"); California Business & Professions Code Sections 17200,** *et seq.*<br><br>2.  **Violation of California's False Advertising Laws ("FAL"); California Business & Professions Code Sections 17500,** *et seq.*<br><br>3.  **Violations of California Consumer Legal Remedies Act ("CLRA"); Civ. Code § 1750,** *et seq.*<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff ALYSSA HEDRICK brings this action on behalf of herself and all others similarly situated against Defendant NEW YORK & COMPANY, INC. and Defendant NEW YORK & COMPANY STORES, INC. (collectively "Defendants"), and states:

## I.   NATURE OF ACTION

1.   This is a class action regarding Defendants' false and misleading advertisement of regular "OUR PRICE" prices, and corresponding phantom "% Off" savings on clothing, accessories, and fashion apparel sold in their New York & Company outlet stores. During the Class Period (defined below), Defendants advertised false price discounts for merchandise sold throughout their outlet stores.

2.   During the Class Period, Defendants continually misled consumers by advertising clothing, accessories, and fashion apparel at discounted, "% Off" prices in their outlet stores. Defendants would offer substantial, continual discounts from their "OUR PRICE" (*i.e.* the price listed on the original price tag) prices. Defendants' "OUR PRICE" prices in their outlet stores were false and misleading, because their "OUR PRICE" prices were either never offered to the general public, or they were offered for an inconsequential period and then continuously discounted, rendering the "OUR PRICE" price false, evasive, and misleading. The advertised discounts were nothing more than mere phantom markdowns because the represented "OUR PRICE" prices in the outlet stores were artificially inflated and were not the predominant prices at which Defendants offered for sale or sold their outlet store products.

3.   Defendants list the "OUR PRICE" regular price[1] on the price tag for almost every product offered for sale in their outlet stores. The represented "OUR PRICE" prices on the price tags in the outlet stores were artificially inflated and were not the predominant prices at which Defendants offered or sold their outlet store products. In fact, based on Plaintiff's investigation, Defendants never used or offered for sale their outlet

---

[1] The false "regular" prices in the outlet stores are commonly referred to as "OUR PRICE" prices. The words "OUR PRICE" are set forth on almost every price tag in the outlet stores to indicate the "regular" price at which merchandise was purportedly offered for sale.

store products at the "OUR PRICE" price.  As such, the "OUR PRICE" price constitutes a sham regular price.

4.     Defendants convey their deceptive pricing scheme to consumers through in-store signage offering steep discounts from the "OUR PRICE" prices listed in the outlet stores. *See* Exhibit A. For example, Defendants prominently display their pricing scheme by advertising deep discounts on various items throughout their outlet stores.  There are typically large placard signs advertising the sale price or the "% Off" of the regular price tag price. *See* Exhibit A.

5.     In the New York & Company outlet stores, Defendants convey their prices to consumers by advertising the "regular" price of the goods sold on the price tag as the "OUR PRICE."  *See* Exhibit A, p.4 (displaying the "OUR PRICE" price listed on the item's price tag). Defendants then offer a "% Off" discount from the "OUR PRICE" price. *See* Exhibit A, pp. 1-3.  However, the "OUR PRICE" price offered on the price tag is a false regular price because Defendants never sell their outlet store products at the "OUR PRICE" price. The "OUR PRICE" price is never actually the "regular" or market" price for the goods sold at the outlet stores; rather, it is a fictional price from which Defendants offer deep discounts to lure consumers into believing they are receiving a substantial discount. Defendants utilize the "OUR PRICE" price to mislead consumers into believing they are purchasing New York & Company merchandise that Defendants once sold or offered for sale at the "OUR PRICE" at their outlet stores.

6.     Defendants manufacture and sell a completely different line of clothing in their outlet stores than those sold in their retail stores. The only channel Defendants ever sell the majority (90%) of their outlet store clothing is at the New York & Company outlet stores, not at Defendants' traditional retail stores. Defendants manufacture their branded outlet clothing strictly for distribution in their outlet stores.  It follows that Defendants never actually sell their outlet-made clothing at the "OUR PRICE" price. Instead, they uniformly and systematically at all times offer deep discounts from the "OUR PRICE" regular price tag prices.

CLASS ACTION COMPLAINT

7.     By commonly offering 30%-50% off the "OUR PRICE" price tag in their outlet stores, Defendants create the false impression that consumers are getting goods traditionally sold in the New York & Company retail stores, when in fact they are purchasing clothing that Defendants manufactured specifically for their outlet stores.  In reality, Defendants never sold their outlet store clothing at the "OUR PRICE" price; thus, the "OUR PRICE" price is simply a false regular price used to create the (false) impression of significant savings geared to encourage consumer purchasing.

8.     Since Defendants' "OUR PRICE" never existed, it certainly did not constitute the prevailing market retail price for such products within the three months next immediately preceding the publication of the sales tag.  Because Defendants sell their own exclusive, branded merchandise, there is no other market price for the products other than the price set at Defendants' outlet stores.  The difference between the sale price and the "OUR PRICE" price constitutes a false savings percentage designed to lure consumers into purchasing products they believe are significantly discounted.

9.     Through their false and misleading marketing, advertising and pricing scheme, Defendants violated, and continue to violate California law prohibiting advertising goods for sale as discounted from former prices, which are false, and prohibiting misleading statements about the existence of and amount of price reductions. Specifically, Defendants violated, and continue to violate California's Business & Professions Code §§ 17200, *et seq* (the "UCL"), California's Business & Professions Code §§ 17500, *et seq* (the "FAL"), the California Consumers' Legal Remedies Act, California Civil Code §§ 1750, *et seq* (the "CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements.  15 U.S.C. § 52(a).

10.    Plaintiff brings this action on behalf of herself  and other similarly situated consumers who have purchased one or more clothing, accessories, and fashion apparel at Defendants' outlet stores that were deceptively represented as discounted from false regular prices in order to halt the dissemination of this false, misleading, and deceptive

price scheme, to correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased Defendants' products. Plaintiff seeks restitution and other equitable remedies under the UCL and FAL; and restitution and damages under the CLRA.

## II. JURISDICTION AND VENUE

11.    This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C §1332 (d)(2).   The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Class have a different citizenship from Defendants.

12.    The Southern District of California has personal jurisdiction over Defendants named in this action because Defendants conduct business in the State of California. Defendants have sufficient minimum contacts in California, and/or otherwise intentionally avail themselves of the California market through the ownership and operation of 47 outlet stores within the State of California.

13.    Venue is proper under 28 U.S.C. § 1391(b) because Defendants transact substantial business in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims arose here.

## III. PARTIES

### Plaintiff

14.    ALYSSA HEDRICK now resides in Phoenix, Arizona. At all relevant times during the events described herein, Plaintiff lived in San Diego, California. Plaintiff, in reliance on Defendants' false and deceptive advertising, marketing and "discount" pricing scheme, purchased a hot pink sleeveless women's keyhole top with silver hardware, for approximately $13.47, exclusive of tax, on or around April 27, 2016 at a New York & Company outlet store, located at Las Americas Premium Outlets, 4211 Camino De La Plaza, San Diego, CA 92173.  *See* Exhibit B, Plaintiff's purchase receipt.  Plaintiff went shopping in order to buy some clothing for herself.  When she entered the New York & Company outlet store, she noticed a large rectangular sign sitting on a table above a

clothing rack. The sign she observed looked similar to the sign in Exhibit A, pp. 1-3. The sign advertised that the women's tops hanging on the rack were "40% Off." She found a hot pink sleeveless women's keyhole top with silver hardware and examined the regular "OUR PRICE" price as announced by the price tag as $24.95. *See* Exhibit C.12, picture of top Plaintiff purchased. The price tag looked similar to the price tag depicted in Exhibit A, p.4. She understood the discount sign to mean that the tops were on sale for "40% Off" their regular price.

15. Ms. Hedrick believed she was receiving a significant discount. Ms. Hedrick believed the top she was purchasing was recently offered for sale in the New York & Company outlet store for the advertised regular price of $24.95. However, Defendants never sold the top in any New York & Company outlet store at the regular price of $24.95 in the 90 days preceding her purchase. The top Ms. Hedrick purchased had been continuously and substantially discounted for at least several months, and possibly longer, according to Plaintiff's counsel's investigation. Defendants used the false or severely outdated "OUR PRICE" regular price as a means to deceive Ms. Hedrick into believing that she was getting a good deal and a steep discount on the top she purchased. Therefore, Ms. Hedrick did not receive the benefit of the bargain and was damaged by purchasing the top.

16. Plaintiff would not have purchased the top without the misrepresentations made by Defendants. As a result, Plaintiff has been personally victimized by and suffered economic injury as a direct result of Defendants' unlawful, unfair and fraudulent conduct.

17. Defendants know that their comparative price advertising is false, deceptive, misleading and unlawful under California law.

18. Defendants fraudulently concealed from and intentionally failed to disclose to Plaintiff and other members of the proposed class the truth about their advertised price and former prices.

19. At all relevant times, Defendants have been under a duty to Plaintiff and the proposed class to disclose the truth about their false discounts.

20.     Plaintiff relied upon Defendants' artificially inflated market price and false discounts when purchasing her top at Defendants' outlet store.  Plaintiff would not have made such purchases but for Defendants' representations of fabricated regular "OUR PRICE" prices and false discounts.

21.     Plaintiff and the Class reasonably and justifiably acted and relied on the substantial price differences that Defendants advertised, and made purchases believing that they were receiving a substantial discount on an item of greater value than it actually was.  Plaintiff, like other class members, was lured in, relied on, and damaged by these pricing schemes that Defendants carried out.

22.     Defendants intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiff and the proposed class to purchase New York & Company branded products in their outlet stores.

**Defendants**

23.     Plaintiff is informed and believes, and upon such information and belief alleges, Defendant New York & Company, Inc. is a Delaware Corporation with its principal executive offices in New York, New York.

24.     Plaintiff is informed and believes, and upon such information and belief alleges, Defendant New York & Company Stores, Inc. is a New York Corporation with its principal executive offices in New York, New York.

25.     Defendants operate New York & Company retail stores, outlet stores, as well as the nyandcompany.com website, and advertise, market, distribute, and/or sell clothing and clothing accessories in California and throughout the United States. Defendants maintain 47 outlet stores in the State of California and over 300 outlet stores nationwide. This action involves only those products Defendants sell at their outlet store locations.

26.     Plaintiff does not know the true names or capacities of the persons or entities sued herein as DOES 1-50, inclusive, and therefore sues such Defendants by such fictitious names.  Plaintiff is informed and believes, and upon such information and belief

alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of these Defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## IV.   FACTUAL BACKGROUND

27.    In the spring of 2015, Plaintiff's counsel launched an investigation to observe and evaluate the pricing practices of dozens of San Diego County retail stores engaged in improper sale-discounting practices. Plaintiff's counsel tracked the stores by sending investigators into shopping malls and outlet malls to record the prices of the corresponding discounts of products offered for sale. Utilizing this data and online research, Plaintiff's counsel identified retailers who were engaged in improper sale-discounting practices. Plaintiff's counsel focused their investigation on retailers who advertised their products by utilizing "false" regular prices from which discounts were advertised and by identifying those retailers who were continuously advertising their products at discounted prices.

28.    Plaintiff's counsel identified Defendants engaging in deceptive pricing practices at their outlet stores as follows: Defendants listed each item for sale with a price tag, which contains the language "OUR PRICE" and the corresponding price of the item. The "OUR PRICE" price tags are false regular prices. Defendants continuously offer a discounted "% Off" from the false "OUR PRICE" price tags. The "OUR PRICE" prices are never actually offered at the outlet stores.  Rather, the "OUR PRICE" prices are elusive and used only as a baseline to advertise the continuous discounts.

29.    The discounts from the false "OUR PRICE" prices are communicated to consumers through the use of in store placards and signage. See Exhibit A, pp. 1-3. The signs convey a certain percentage off of the false "OUR PRICE" prices. Plaintiffs' counsel's investigation revealed that the in-store discounts frequently change every couple of weeks, but the products are never sold at their "OUR PRICE" prices in the outlet stores.

30.    Plaintiffs' investigation entailed one or more investigators entering Defendants' outlet stores to observe the "OUR PRICE" prices and corresponding discounts on items offered for sale. Plaintiff's investigations were conducted at Defendants' stores, including: the New York & Company outlet store located at 415 Parkway Plaza, El Cajon, CA 92020 and the New York & Company outlet store located at 4211 Camino De La Plaza, San Diego, CA 92173[2].

31.    Plaintiffs' investigations revealed all items in the outlet store were discounted at all times. Plaintiffs' investigators never discovered an item that was offered for sale at the "OUR PRICE" price. The sales in each of the outlet stores would change over time, but none of the items in the outlet store would be offered for sale at the "OUR PRICE" price. Set forth in Exhibit C is an example of the products Plaintiff investigated and determined to be continuously discounted from their false "OUR PRICE" price in the outlet stores for 90 days or more.

32.    The substantial number and variety of products continuously discounted demonstrates that Defendants are engaged in systematic and pervasive practice of improperly discounting their products for sale in their outlet stores.

33.    Defendants engaged in a systematic scheme to continuously discount its merchandise in its outlet stores without ever offering the merchandise for sale at the "OUR PRICE" price.

34.    New York & Company, Inc.'s 10-K Annual Report ("Report") for the United States Securities and Exchange Commission for the fiscal year ending on January 30, 2016 identifies the channels through which Defendants sell their merchandise: New York & Company retail stores, New York & Company Outlet stores, and their eCommerce store ("website").

35.    Within this Report, Defendants represent to the public that their "Outlet stores offer a merchandise mix consisting of apparel and accessories that is approximately

---

[2] The period of the various investigations are set forth in Exhibit C.

90% exclusive to the Outlet stores, and some merchandise that can be found at New York & Company and clearance merchandise."

36.    Since approximately 90% of the merchandise sold at Defendants' outlet stores is sold exclusively at those outlet stores, it is reasonable to conclude that Defendants manufacture apparel and accessories specifically for their outlet stores.

37.    This is further evidenced by Defendants' return policy that states, "[m]erchandise purchased at a New York & Company Outlet stores may only be returned to New York & Company Outlet stores."  See New York & Company Returns and Exchanges, http://www.nyandcompany.com/static/help/returns/policy/, last accessed January 23, 2017 (emphasis added).

38.    Defendants operate their systematic false pricing scheme within the margins of the relevant market it creates.  The relevant market for Defendants' outlet store merchandise is defined by the outlet-specific inventory offered for sale exclusively at Defendants' outlet stores.

39.    Defendants know that their comparative price advertising is false, deceptive, misleading and unlawful under California law.

40.    Defendants fraudulently concealed from and intentionally failed to disclose to Plaintiff and other members of the proposed class the truth about its advertised price and former prices.

41.    At all relevant times, Defendants have been under a duty to Plaintiff and the proposed class to disclose the truth about their false discounts.

42.    Plaintiff relied upon Defendants' artificially inflated "OUR PRICE" and false discounts when purchasing her top at Defendants' outlet store.  Plaintiff would not have made such purchase but for Defendants' representation of the fabricated original "OUR PRICE" and false discount.

43.    Plaintiff and the Class reasonably and justifiably acted and relied on the substantial price differences that Defendants advertised, and made purchases believing that they were receiving a substantial discount on an item of greater value than it actually

was.  Plaintiff, like other class members, was lured in, relied on, and damaged by these pricing schemes that Defendants carried out.

44.    Defendants intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiff and the proposed class to purchase New York & Company branded products in their outlet stores.

## V.    CLASS ALLEGATIONS

45.    Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class (the " Class") against Defendant:

> All persons residing in the State of California who purchased one or more items from Defendants' outlet store, which was offered at a purported discount from an "OUR PRICE" or regular price at any time from June 9, 2013 to the date of certification (the "Class Period").

46.    Excluded from the Class are Defendants, as well as their officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of Defendants.  Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

47.    *Numerosity*: The class members are so numerous that joinder of all members is impracticable.  Plaintiff is informed and believes that the proposed Class contains hundreds of thousands of individuals who have been damaged by Defendants' conduct as alleged herein.  The precise number of Class members is unknown to Plaintiff.

48.    ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions

include, but are not limited to, the following:

a. Whether, during the Class Period, Defendants used false regular or "OUR PRICE" price labels and falsely advertised price discounts on their New York & Company branded products they sold in their outlet stores;

b. Whether, during the Class Period, the regular or "OUR PRICE" prices advertised by Defendants were the prevailing market prices for the respective New York & Company branded products during the three month period preceding the dissemination and/or publication of the advertised former prices;

c. Whether Defendants' alleged conduct constitutes violations of the laws asserted;

d. Whether Defendants informed consumers of the last date on which the purported regular "OUR PRICE" price did prevail prior to placing discounted products on sale or offering them as final sale items;

e. Whether Defendants informed consumers that the regular or "OUR PRICE" prices of the products sold in their outlet stores were fictional prices; prices at which the products had never been offered for sale;

f. Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices under the laws asserted;

g. Whether Defendants engaged in false or misleading advertising; and

h. Whether Plaintiff and Class members are entitled to damages and/or restitution and the proper measure of that loss.

49. ***Typicality***: Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Defendants' false and deceptive price advertising scheme, as alleged herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the class.

50.   **Adequacy**:  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no antagonistic or adverse interest to those of the Class.

51.   **Superiority**: The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to her and the class for the wrongs alleged.  The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants.  It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendants will be permitted to retain the proceeds of their fraudulent and deceptive misdeeds.

52.   All Class members, including Plaintiff, were exposed to one or more of Defendants' misrepresentations or omissions of material fact claiming that former regular or "OUR PRICE" advertised prices were in existence.  Due to the scope and extent of Defendants' consistent false discount price advertising scheme, disseminated in a years-long campaign to consumers via a number of different platforms – in-store displays, print advertisements, etc. – it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class.  In addition, it can be reasonably presumed that all Class members, including, Plaintiff affirmatively acted in response to the representations contained in Defendants' false advertising scheme when purchasing New York & Company branded merchandise at Defendants' outlet stores.

53.   Defendants keep extensive computerized records of their customers through, *inter alia*, customer loyalty programs and general marketing programs. Defendants also

monitor all transactions through XBR reporting & analysis software. Defendants have one or more databases through which Defendants can identify and ascertain a significant majority of Class members.   Defendants also maintain contact information, including email and home addresses, through which Defendants can disseminate notice of this action in accordance with due process requirements.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### Violation Unfair Competition Law
#### Business and Professions Code § 17200 et seq.

54.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

55.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17200.

56.    The UCL imposes strict liability.  Plaintiff need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – but only that such practices occurred.

*"Unfair" Prong*

57.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

58.    Defendants' actions constitute "unfair" business acts or practices because, as alleged above, Defendants engaged in misleading and deceptive price comparison. Defendants' advertised regular or "OUR PRICE" prices were nothing more than fabricated regular prices leading to phantom "% Off" markdowns. Defendants' acts and practices offended an established public policy because they engaged in immoral,

unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

59.     The harm to Plaintiff and Class members outweighs the utility of Defendants' practices.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misleading and deceptive conduct described herein.

### *"Fraudulent" Prong*

60.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

61.     Defendants' acts and practices alleged above have deceived Plaintiff and are highly likely to deceive members of the consuming public.  Plaintiff relied on Defendants' fraudulent and deceptive representations regarding their "OUR PRICE" prices at Defendants' outlet stores, and the corresponding discounts for the New York & Company branded products, which Defendants sell. These misrepresentations played a substantial role in Plaintiff's decision and that of the proposed class to purchase the products at steep discounts, and Plaintiff would not have purchased their products without Defendants' misrepresentations.

### *"Unlawful" Prong*

62.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

63.     Defendants' acts and practices alleged above constitute unlawful business acts or practices as they have violated state and federal law in connection with their deceptive pricing scheme.  The Federal Trade Commissions Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements.  15 U.S.C. § 52(a).  Under the Federal Trade Commission, false former pricing schemes, similar to the ones implemented by Defendants, are described as deceptive practices that would violate the FTCA:

 (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – ***for example, where an article price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one;*** the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

64.   In addition to federal law, California law also expressly prohibits false former pricing schemes.  California's False Advertising Law, Bus. & Prof. Code §17501, ("FAL"), entitled "*Worth or value; statements as to former price,*" states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

***No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement*** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501 (emphasis added).

65.   As detailed in Plaintiff's Third Cause of Action below, the California

15
CLASS ACTION COMPLAINT

Consumer Legal Remedies Act, Civ. Code § 1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

66.   The violation of any law constitutes an "unlawful" business practice under the UCL.

67.   As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

68.   Defendants' practices, as set forth above, have mislead Plaintiff, the proposed class, and the public in the past and will continue to misled in the future. Consequently, Defendants' practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

69.   Defendants' violation of the UCL through their unlawful, unfair, and fraudulent business practices are ongoing and present a continuing threat that members of the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated regular "OUR PRICE" prices to "% Off" sale prices.  These false comparisons created phantom markdowns and lead to financial damage for consumers, like Plaintiff and the proposed Class.

70.   Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief to order Defendants to cease this unfair competition, as well as disgorgement and restitution to Plaintiff and the Class of all Defendants' revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

## SECOND CAUSE OF ACTION
### Violation of the California False Advertising Law,
### California Business & Professions Code § 17500, *et seq.*

71.   Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

72.   Cal. Bus. & Prof. Code § 17500 provides:

It is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is ***untrue or misleading***, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…

[Emphasis added].

73.    The "intent" required by Section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

74.    Similarly, this section provides, "no price shall be advertised as a former price of any advertised thing, unless the alleged former prices was the prevailing market price…within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement."  Cal Bus. & Prof. Code § 17501.

75.    Defendants' routine of advertising continuing discounted prices from false regular or "OUR PRICE" prices in their outlet stores associated with their New York & Company branded outlet store products, which were never the true prevailing "market" prices of those products and were materially greater than the true prevailing prices, was an unfair, untrue and misleading practice.  This deceptive marketing practice gave consumers the false impression that the products were regularly sold at New York & Company outlet stores for a substantially higher price than they actually were—therefore, leading to the false impression that the New York & Company branded products were worth more than they actually were.

76.    Defendants misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code, as alleged above.

77.    As a direct and proximate result of Defendants' misleading and false advertisements, Plaintiff and Class members have suffered injury in fact and have lost

money.  As such, Plaintiff requests that this Court order Defendants to restore this money to Plaintiff and all Class members. Otherwise, Plaintiff, Class members and the broader, general public will be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CAUSE OF ACTION**
**Violation of the Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code § 1750, *et seq*.**

78.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

79.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*.  Plaintiff and each member of the proposed class are "consumers" as defined by Cal. Civ. Code § 1761(d).  Defendants' sale of the New York & Company branded products at their outlet stores to Plaintiff and the Class were "transactions" within the meaning of Cal. Civ. Code § 1761(e).  The products purchased by Plaintiff and the Class are "goods" within the meaning of Cal. Civ. Code § 1761(a).

80.    Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a)(13) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of New York & Company outlet store products:

        a.  Advertising goods or services with intent not to sell them as advertised; (a)(9); and

        b.  Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; (a)(13).

81.    At no time did Defendants disclose to Plaintiff that the "OUR PRICE" prices for the outlet products were fictional prices. Every discount offered in Defendants' outlet stores is therefore deceptive and misleading. Defendants failed to disclose to Plaintiff and members of the class that 90% of the merchandise sold at Defendants' outlet stores was never sold in their retail stores or in any other store except Defendants' outlet stores.

18
**CLASS ACTION COMPLAINT**

Defendants' use of the regular or "OUR PRICE" price tags misleads consumers, including Plaintiff into believing that the represented price on the outlet store products was a real, former price, when in fact it was not. Therefore, the discounts offered from the false "OUR PRICE" price tags were phantom discounts—false representations intended to improperly influence consumers into purchasing products at higher prices than they would have paid if Defendants had not engage in the deceptive conduct.

82.   Pursuant to § 1782(a) of the CLRA, on June 9, 2017, Plaintiff's counsel notified Defendants in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act.

83.   If Defendants fail to appropriately respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will amend her complaint to pursue claims for actual, punitive, and statutory damages as appropriate against Defendants.   As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

**VII.   PRAYER FOR RELIEF**

84.   Wherefore, Plaintiff, on behalf of herself and on behalf of the other members of the Class, requests that this Court award relief against Defendants as follows:

a.   An order certifying the class and designating ALYSSA HEDRICK as the Class Representative and her counsel as Class Counsel;

b.   Awarding Plaintiff and the proposed Class members damages;

c.   Awarding restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the Class members as a result of their unlawful, unfair and fraudulent business practices described herein;

d.   Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful

practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its misconduct and pay them all money they are required to pay;

e.  Order Defendants to engage in a corrective advertising campaign;

f.  Awarding attorneys' fees and costs; and

g.  For such other and further relief as the Court may deem necessary or appropriate.

///

///

///

CLASS ACTION COMPLAINT

## VIII.  DEMAND FOR JURY TRIAL

85.   Plaintiff hereby demands a jury trial for all of the claims so triable.


Dated: June 9, 2017

**CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP**

*/s/ Todd D. Carpenter*
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: (619) 347-3517
Facsimile: (619) 756-6990
tcarpenter@carlsonlynch.com
bcasola@carlsonlynch.com


Edwin J. Kilpela
Gary F. Lynch
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
ekilpela@carlsonlynch.com
glynch@carlsonlynch.com


*Attorneys for Plaintiff*